[No. 4108.]

## School District No. 76, in Weld County, v. Kirby.

Schools—*Employment of an Unlicensed Person as a Teacher.* Under Rev. Stat., sec. 5990, a contract by a school board employing as a teacher one who has no license to teach is absolutely void. *Sedgwick County v. Johnson,* 26 Colo. App., 433, followed.

*Error to Weld District Court.* Hon. Robert G. Strong, Judge.

Mr. R. E. Winbourn, for plaintiff in error.

Mr. Guy D. Duncan and Mr. F. J. Green, for defendant in error.

Cunningham, P. J., rendered the opinion of the court.

This action was brought by the defendant in error, as plaintiff below, to recover for services rendered and to be rendered by her as a teacher in the public schools, under an alleged contract said to have been entered into between herself and the plaintiff in error.

It is undisputed that at the time plaintiff entered into the agreement to teach, she held no license or certificate. The record further discloses that the plaintiff was advised, after she obtained her license and before the term of school began, that two of the three members of the school board would object to her teaching.

During the two weeks that she actually attempted to teach, these two members made frequent visits to the schoolhouse and urged her to withdraw from the school. During the two weeks that the defendant in error attempted to teach, there was in the same room with her another teacher, who had been employed by the board, who was also attempting to teach the same grade; both teachers used the same desk. At the end of the two weeks defendant in error,.

under protest, ceased teaching, and thereafter filed suit, and had judgment for the full amount which she should have received had she completed the term without opposition.

Since the present case was tried, and since the writ of error was sued out, this court handed down the opinion in *School Dist. No. 46 of Sedgwick Co. v. Johnson,* reported in 143 Pac., 264, wherein we ruled that under sec. 6754, M. A. S., 1912; sec. 5990 R. S., 1908, a contract entered into between a school board and a teacher not holding a license to teach is void *ab initio,* and that a cause of action supported only by proof of such contract could not be sustained, where the same was not in any manner lawfully ratified by the school board after plaintiff became qualified by receiving her certificate.

It is plain from the statement we have already made of the facts in this case that there can be no contention that the school board ratified the contract which they attempted to enter into with defendant in error, subsequent to the time she received her license, even if it be conceded that a void contract is susceptible of ratification. Neither is there any evidence of a new contract, express or implied, having been entered into between the parties hereto, after August 18th, the date of defendant in error's license. On the contrary, defendant in error, in her complaint, counts solely upon the specific contract or agreement which she entered into with the school board on *May* 20, *almost ninety days before she received her license.*

In addition to the authorities cited by Judge King in *School Dist. No. 46 v. Johnson, supra,* the following additional cases support the ruling therein announced:

*School Directors v. Newman,* 47 Ill. App., 364; *School Directors v. Jennings,* 10 Ill. App., 643; *Bryan v. Fractional School Dist., etc.,* 111 Mich., 67, 69 N. W., 74; *Butler v. Haines,* 79 Ind., 575; *Stevenson v. School Directors,* 87 Ill., 255; *Jenness v. School Dist.,* 12 Minn., 448; *Hosmer v. Sheldon School Dist. No. 2,* 4 N. D., 197, 59 N. W., 1035, 25 L. R.

A., 383, 50 Am. St., 639; Cyc, 1070.

On the authorities above cited, the judgment of the trial court is reversed, with directions to enter judgment dismissing plaintiff's complaint.

*Reversed and remanded with directions.*

*On Rehearing:*

Counsel for defendant in error has filed a spirited brief on rehearing, in which, with much frankness, we are admonished that "nothing but derision and disrepute can await a court which permits a decision to stand which misstates a record, and thereby reads a case out of a salutary and just rule, and into a technical one." Counsel then proceeds to state, with great positiveness, that there is nothing in the record to support our statement in the original opinion "that plaintiff was advised, after she obtained her license, and before the term of school began, that two of the three members of the school board would object to her teaching."

Mindful of our duty to state the record with substantial accuracy (a duty which we apprehend rests alike upon court and counsel), we have again gone carefully over the testimony offered on the trial of this cause. At folio 212 defendant in error testified that when she went to the schoolhouse on the first day of the term, "I found Miss Chorn, who said she had been hired to teach the same school that I had been hired to teach." At folios 219 to 224 plaintiff was interrogated concerning a certain letter from the board, which, at first, she insisted was directed to her brother, but later she was asked the following questions, and made the following answers:

Q. Will you state whether or not there was an objection to your continuing in the school?

A. To me?

Q. Yes.

A. I don't think so.

Q. You didn't see the letter?

A.   Yes, I saw the letter.

Q.   And don't you remember that in the letter there was objection to you?

A.   Yes, I believe he did mention my name.

Q.   When was that that you received that letter?

A.   It was some time about the latter part of August, if I remember rightly.   (The school began Sept. 5th.) * * *

Q.   When did you first receive notice of the objection to your teaching the school after you had received that paper?

A.   When I saw that other letter.

Q.   Was that the first you had heard of it?

A.   Yes, sir.

Q.   So that when you went down to the school on Sept. 5th, on the opening day of school, you knew that there was, there would be, objection to your taking charge of the school?

A.   That's what I would infer from that letter.

Q.   And you knew that Miss Chorn had been placed there by the board to teach the same grade that you were an applicant for, didn't you?

A.   Yes, sir. * * *

Q.   You knew that all the objections to your teaching came from members of the board, and members of the board did object to your taking charge of that school on the opening day, did they not, Miss Kirby?

A.   No, I don't think I did.

Q.   From what parties then would the objection come, was it not from the members of the school board; you wouldn't pay any attention to any others?

A.   Why, no.

Q.   Didn't you know these objections were from the members of the school board?

A.   From some members of the board.

Now, there were but three members of the board, and in the light of the testimony set forth above, which was

given by the defendant in error herself, we are unable to perceive in what respect our statement in the original opinion "that the record further discloses that the plaintiff was advised, after she had obtained her license and before the term of school began, that two of the three members of the school board would object to her teaching" is, as counsel have charged in their brief on rehearing, "in direct conflict with the record in this case."

Counsel state (and therein lies, we are sure, the explanation for the error into which they have fallen) "we assume that this court adheres to the usual rule,  *  *  *  that the abstract becomes the record upon which this court must base its decision." This court has always felt free to resort to the original bill of exceptions when dissatisfied with the abstract thereof, but we do not desire to be understood as intimating that such is the bounden duty of the court. In this case, because of uncertainty, we have examined the original bill of exceptions, and we do not feel that our conduct in this respect merits criticism or requires an apology.

In the original opinion we use the following language:

"During the two weeks that she actually attempted to teach, these two members of the board made frequent visits to the schoolhouse and urged her to withdraw from the school."

Commenting on this sentence counsel, in their brief on rehearing, say: "This statement is also in the face of the record. Without this mis-statement of the facts in this case the rule in the Johnson case cannot be invoked."

One of the members of the school board, during the time mentioned, did make frequent visits to the schoolhouse for the purpose of urging the defendant in error to withdraw from the school, the first visit being on the very first day that she attempted to teach, and concerning that visit defendant in error testified that "Mr. Buchanan was the next member of the school board that I saw that day. [Meaning the first day.] He told me that he wished me to leave

the school, that I had not been hired, and that I was disturbing the progress of the work. I told him that I was going to stay there until I had to leave. He made several visits and each time mentioned something about the school." Now, Mr. Buchanan was the secretary of the board—one of the two members who had signed the so-called written contract, to which we refer in the original opinion. The other member of the school board to whom we refer in the extract from our original opinion, last above quoted, appears not to have "made frequent visits to the schoolhouse," but to have made only a single visit. However, we were attempting, in the original opinion, to negative the contention that the school board had ratified the void contract, or rather, had, as in *Hotz vs. School Dist.*, 1 Colo. App., 40, 27 Pac., 15, done anything, after defendant in error had begun to teach, which "was equivalent to the making of a new contract upon the terms of the one into which they had attempted to enter." Whether Beiderman, the second member, had made frequent visits or but a single visit to the schoolhouse, does not seem to us to be at all vital, especially since the record discloses, without contradiction, so far as we are able to discover, that he never signed the original contract; in fact, had no knowledge that it had been signed until a week or ten days after it was executed, and he had no notice of the special meeting at which Buchanan and the third member of the school board appear to have drafted and signed the writing. We think it can hardly be contended that with the secretary, who did sign the original contract, persistently urging the defendant in error to quit the school, from the very first day she began to teach until the last day that she remained there; with Beiderman, the second member, never having consented to her employment, and having appeared at the school during the first two weeks for the purpose of protesting against her teaching, that the board did anything which "was equivalent to the making of a new contract upon the terms of the one into which they attempted to enter."

So far as we have been able to discover, all of the ratifying of the absolutely void contract of May 20th (void because entered into by two members of the board, at a special meeting, without notice to or knowledge of the third member, as well as for the reason pointed out in our original opinion), was done by a single member of the board. We think it may fairly be inferred, from the testimony of Miss Kirby and her brothers, that a heated controversy had arisen during the month of August over the regularity of her appointment. They testified that Mr. Saunders, who was present on the first day of the school to "install" defendant in error, stated in their presence, during August: "We have employed your brother, Joe, and your sister to teach in our school for the coming year and *I will be present to see that they take their places,* or words to that effect"—italics ours.

As a further indication that defendant in error was aware of the opposition to her, long before she began to teach, we find Saunders (the only member of the board who ever said or did a thing, after she obtained her license, from which a new contract of employment might be inferred), in the law office of Mr. Duncan, attorney for defendant in error, during the month of August, in the company of her brother, asserting the regularity of Miss Kirby's employment, and basing his claim of regularity upon the statement that the board *had delegated to him the power to employ her.*

Counsel for defendant in error further complain of our announcement in the original opinion that "defendant in error, in her complaint, counts solely upon the specific contract or agreement she entered into with the school board on May 20th, almost ninety days before she received her license." They insist that, when rightly construed, the complaint in the case presents the issue of "ratification, acquiescence, estoppel and a new implied contract" and that even if the complaint was defective in this regard, such defect was waived by their adversary. There is, we freely concede, a fair basis for this contention, but in our view of the case,

if the contention be granted, it cannot change the results, since, for the reasons pointed out in the original opinion, as well as from the quotation from the defendant in error's own testimony, set out herein, it is clear that the proof would not support the issue of ratification, acquiescence, estoppel or a new implied contract. On the contrary, the record conclusively negatives that issue.

Defendant in error insists, in her brief on rehearing, as well as in her former brief, that, on the strength of the written agreement of May 20, she attended Summer school. She thereby seeks, we infer, to sustain her theory that the board is estopped to deny the legality of said agreement. We are unable to discover either allegation or proof to support this contention. There is proof that she attended the Summer school, but there is no hint that she would not have done so had the writing never been signed. Indeed, her brother, Joseph Kirby, testified that before his sister had applied for the school, he had a talk with the president of the board, in his sister's interest, wherein, to use his own language, "I told him she would finish in June, [Meaning she would finish the course at the Boulder State Preparatory School] and she expected to attend Summer school in Boulder six weeks and she expected to take the examination at the close."

We do not feel that the slight inaccuracies in the original opinion, to which defendant in error has called our attention, are of sufficient importance to change the result or justify a rehearing.

*Rehearing Denied.*

Decided May 10th, A. D. 1915. Rehearing denied June, 14th, A. D. 1915.